UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED

2003 DEC -9 P 2: 27

| | |
|---|---|
| WILLIAM J. MAZE | : |
| | : CASE NO: |
| V. | : 303CV166 (SRU) |
| | : |
| FINANCIAL FREEDOM SENIOR | : |
| FUNDING CORP. | : December 8, 2003 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ORDER
COMPELLLING DISCLOSURE AND FOR IMPOSITION OF SANCTIONS
FAILING DISCLOSURE**

Pursuant to Rule 37(a)(2) of the Federal Rules of Civil Procedure and Rule 37(a)(2) of the Local Rules of Civil Procedure for the District of Connecticut, the plaintiff moves for an order compelling the defendant Financial Freedom Senior Funding Corp. ("Financial Freedom") to make certain disclosures and provide inspection to the plaintiff and, failing such disclosure, for the entry of a judgment of default against Financial Freedom.

I. **Nature of the Case**

Financial Freedom is in the business of offering reverse mortgage financing to consumers in the State of Connecticut. See Answer and Affirmative Defenses dated September 2, 2003 admitting relevant allegations of First Amended Complaint dated July 10, 2003 ¶6. The plaintiff entered into an agreement whereby plaintiff, as a "Reverse

Mortgage Specialist," would generate leads for reverse mortgage loans in Connecticut and be paid certain commission fees as a result of loans closed due to those leads generated. This agreement was arranged with Jeanine Ehrlich who was the Regional Manager for Unity Mortgage Corp. and then Regional Manager for Financial Freedom. Financial Freedom purchased the reverse mortgage assets of Unity Mortgage Corp. This transaction apparently was effective in November 2000. The plaintiff expended great efforts and expense as a Reverse Mortgage Specialist to generate leads for reverse mortgage loans including, among other things, printing and mailing a mass mailing to targeted senior homeowners receiving property tax abatements whose names were obtained by plaintiff pursuant to freedom-of-information requests. Ms. Ehrlich, as Regional Manager for Financial Freedom, terminated the plaintiff's agreement in early 2001. Subsequent thereto, Financial Freedom closed on nine reverse mortgage loans with seniors in Connecticut targeted by plaintiff and to whom plaintiff had sent the mass mailing. Plaintiff's complaint asserts various causes of action arising out of this termination. Financial Freedom denies it had any obligation to pay compensation to plaintiff. Answer and Affirmative Defenses dated September 2, 2003 ¶ 24.

Financial Freedom asserts by way of affirmative defenses that plaintiff has failed to join an indispensable party, namely, Unity Mortgage Corp., a failure to state a claim upon which relief can be granted, and failure of jurisdiction. Answer and Affirmative Defenses dated September 2, 2003.[1]

### Listing of Each Item of Discovery Sought and Opposed

Plaintiff seeks the following information and inspection:

1. In plaintiff's FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION ("hereinafter "Plaintiff's July 9th Request"), the plaintiff requested the following in Interrogatory 2.

> 2. As to each of the Nine Financial Freedom Reverse Mortgage Loans,[2] please state the amount of the origination fees received, the name, title and address of every person(s) and entity to whom the origination fees were paid, the amount of the commission paid; and the name, title and address of every person who received the commission fees.

Although objections were interposed by Financial Freedom to most of the interrogatories and production

---

[1] The Parties' Planning Report dated May 25, 2003 indicates that the alleged "indispensable party" is claimed to be Unity Mortgage Corp. and that the jurisdictional defense claim is based on the alleged lack of proof concerning an employment relationship with Financial Freedom. See "Defenses and Claims of Defendant" at page 3.

[2] The date, book and page number and name of each of the nine mortgages and the name of each mortgagor were provided by plaintiff to defendant in the July 9th request. See **Exhibit A**.

3

requests, defendant did <u>not</u> object to this interrogatory and has provided some information in response to the interrogatory. See Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories and Request for Production dated September 2, 2003 with supplemental disclosures attached hereto as **Exhibit A**. The amount of the origination/commission fees received on the Nine Financial Freedom Reverse Mortgage Loans is vital for plaintiff to be able to calculated his damages analysis. Defendant has provided in a letter dated November 4, 2003 (included in Exhibit A) what the origination fees/commission fees for two of the Nine reverse mortgage loans are but the origination fees/commission fees on the remaining seven of the Nine still have not been provided to plaintiff.

<u>Why the item should be allowed</u>: Complete information in response to this interrogatory is vital in order for plaintiff to calculate his damages analysis in this case. Freedom indicates that, for some reason, the fees paid by Financial Freedom on the other seven of the Nine Reverse Mortgage Loans is "not readily accessible." See correspondence dated November 4, 2003. Plaintiff is entitled to this key information promptly.

2.   In Plaintiff's July 9th Request, the plaintiff requested the following in Interrogatory 5.

> 5. Please state the compensation received by Ms. Ehrlich from Financial Freedom since 2000 to the present identifying the portions of said compensation consisting of commission or bonuses based on reverse mortgage loans closed in the state of Connecticut.

Financial Freedom interposed an objection that the interrogatory was claimed not to be relevant to any of the issues in the case and not reasonably calculated to lead to the discovery of admissible evidence.

Why the item should be allowed: There is no dispute that Jeanine Ehrlich was the Regional Manager who terminated the plaintiff's working relationship. The information sought is relevant to the potential motive Ms. Ehrlich may have had in terminating the plaintiff's employment to the extent she may have profited directly or indirectly as a result of leads generated by plaintiff. It is undisputed that Jeanine Ehrlich has, in fact, been paid commission fees on reverse mortgage loans closed by Financial Freedom in Connecticut in 2001 and 2002 (although no amounts have been disclosed): See defendant's response to Interrogatory #19, Exhibit A.

3.   In Plaintiff's July 9th Request, the plaintiff requested the following in Interrogatory 6:

5

> 6. Describe in sufficient detail all transactions, agreements or covenants concerning solicitation or sale of reverse mortgage loans between Unity Mortgage Corp. and Financial Freedom including the titles, dates and effective dates thereof.

See, also, request for production #8, which sought production of:

> 8. A copy of all transactions and written agreements between Unity Mortgage and Financial Freedom and/or Unity Mortgage Corp. and any entity related to Financial Freedom.

Defendant interposed an objection that the interrogatory is vague, etc. and not reasonably calculated to lead to the discovery of admissible evidence and/or it is confidential proprietary information. Without having inspected the Asset Purchase Agreement (see item #4 below), plaintiff cannot be sure that other transactions, agreements or covenants may be relevant. Defendant has refused to disclose the Asset Purchase Agreement or any other information relevant to transactions/agreements/covenants between the two companies.

Why the item should be allowed: Financial Freedom asserts that plaintiff has failed to join an indispensable party. Financial Freedom asserts it will use the offer of employment to William Maze by Unity Mortgage Corp. in its defense. Thus there can be no question that information concerning the relationship between Unity Mortgage Corp. and Financial Freedom, and Financial Freedom's purchase of

6

the reverse mortgage operations of Unity Mortgage Corp. is relevant to Financial Freedom's liability to plaintiff as a reverse mortgage specialist terminated by Financial Freedom.

    4.  In Plaintiff's July 9th Request, the plaintiff requested the following in <u>Interrogatory 7:</u>

> 7. As to the asset purchase regarding transaction between Unity Mortgage Corp. and Financial Freedom referenced in your initial disclosures, please state the following in specific detail:
>
> a. A description of the assets purchased and their location;
> b. The effective date of the acquisition of said assets;
> c. The consideration paid and/or given.
> d. Identify all agreements, unilateral and bilateral, related to the asset purchase, including but not limited to all transactions, agreements, covenants, releases and assignments, including the dates, effective dates, titles of written agreements, and the number of pages of each such agreement.

See, also, request for production #7 which sought production of:

> 7. The following document referenced in defendant's Initial Disclosures: "Asset Purchase documents regarding transaction between Financial Freedom Senior Funding Corp. and Unity Mortgage Corp., Legal Department, Financial Freedom Senior Funding Corp."

Defendant interposed an objection that the interrogatory and to the request for production in that the interrogatory and request seek "confidential and proprietary information of Defendant and a distinct legal entity which is not party to this suit." See Exhibit A. Counsel for Financial Freedom has indicated that Financial Freedom is steadfast

in its refusal to disclose the information requested even though defendant has disclosed that it intends to use the document in its defense in this action. See Defendant's Initial Disclosure, copy attached as **Exhibit B**. [3]

<u>Why the item should be allowed</u>: Financial Freedom asserts a defense that plaintiff has failed to join an indispensable party and denies it had an obligation to pay plaintiff compensation despite the fact that its Regional Manager terminated the plaintiff and that Financial Freedom then proceeded to close on at least the Nine Reverse Mortgage Loans in Connecticut involving homeowners targeted by plaintiff's efforts. It is inequitable and unconscionable for Financial Freedom to raise that defense, to identify the document in its Initial Disclosure as a source of defense, and at the same time to refuse to provide plaintiff with the information to which he is obviously entitled since it relates to the defense raised and forcing plaintiff's counsel to draft this motion for an order compelling such disclosure.

---

[3] In recent correspondence dated November 4, 2003 (see Exhibit A) Financial Freedom's counsel indicates that the document will be disclosed if Unity Mortgage Corp. "is served." Financial Freedom's obligation to provide proper disclosure to plaintiff does not depend on bringing other parties into the case. Plaintiff has no assurance of being able to serve Unity Mortgage Corp. Plaintiff has sought permission to dismiss any action against Unity Mortgage without prejudice.

5. In Plaintiff's July 9th Request, the plaintiff requested the following category of information in Interrogatories 8, 9, 10, 11, 12, and 13: <u>Information concerning the continuation of the reverse mortgage operations of Unity Mortgage Corp. by Financial Freedom</u>. Plaintiff's counsel explained the basis for why the information was sought and defendant's counsel indicated she would confer with her client. Financial Freedom continues to refuse to disclose the information requested in the interrogatories in this category:

> 8. Please describe in sufficient detail how the reverse mortgage operations of Unity Mortgage Corp. were merged with the operations of Financial Freedom and the date on which said operations were merged.
>
> 9. Please describe, in sufficient detail, in what way any business operations of Unity Mortgage Corp. concerning reverse mortgage loans were continued in any way by Financial Freedom including, but not limited to, the number and ways in which sales staff, offices, facilities, telephone numbers and/or web sites previously maintained by Unity Mortgage Corp. were subsequently maintained by Financial Freedom.
>
> 10. Please state the names, addresses and telephone numbers of all persons who, at any time have been employed by, or received commission fees from, Unity Mortgage Corp. and also, at some other time, have been employed by, or received commission fees from, Financial Freedom.
>
> 11. As to reverse mortgages or notes originally in the name of Unity Mortgage Corp. which have been assigned to Financial Freedom or a related entity, please state:
>
> a. The approximate number of Unity Mortgage Corp. reverse mortgages or notes assigned to Financial Freedom or any entity related to Financial Freedom;

9

b. Whether Financial Freedom or any entity related to Financial Freedom services said reverse mortgage loans and/or has entered into any contracts with other companies to service said loans.

12. For the purposes of interrogatory #12 and #13, "employment" refers to all arrangements entered into involving the provision of services for consideration including, but not limited to, employees, service providers, agents, independent contractors, consultants or specialists. As a result of any acquisition of assets or other transaction between Unity Mortgage Corp. and Financial Freedom, or in anticipation thereof, did the employment of certain persons by Unity Mortgage Corp. end?

13. If the answer to the preceding interrogatory is in the affirmative, please state:

a. The names, titles, age, gender and last known addresses of such persons whose employment ended.

b. Of those persons listed in response to part a, identify those persons who were "reverse mortgage specialists" or who had worked on a commission fee basis in connection with reverse mortgage loans before their employment ended.

Why this category of information should be allowed: In its Answer, Financial Freedom has denied that it acquired the reverse mortgage assets of Unity Mortgage Corp. as a result of which the reverse mortgage operations of Unity Mortgage Corp. were merged with those of Financial Freedom. See Answer dated September 2, 2003 ¶12. In light of said denial, and the defense raised by Financial Freedom concerning failure to join an indispensable party/failure to state a claim, plaintiff is entitled to disclosure of this information relevant to Financial Freedom's liability as a successor to Unity Mortgage Corp. (i.e., in addition to its direct liability which plaintiff also claims).

10

Factual information concerning continuation of operations may be relevant to the question of liability as a successor[4] even in the absence of direct liability - which Financial Freedom cannot avoid given its own act of termination and self-enrichment in this case. It is inequitable and unconscionable for Financial Freedom to maintain such denials and raise that defense and at the same time to refuse to provide plaintiff with the relevant information to which he is obviously entitled and forcing plaintiff's counsel to draft this motion for an order compelling such disclosure. The information sought in interrogatories 13 and 14 is not only relevant to the "continued operations" question, it is also relevant to the grounds for elimination of the plaintiff. Plaintiff is entitled to inquire whether he, as part of a class, was eliminated because he was a certain age or gender. If so, then those reasons are relevant, at minimum, to the causes of action asserted for unfair and deceptive acts of Financial Freedom in the course of commerce and the wrongful termination of plaintiff. Financial Freedom has interposed the spurious objection that the questions are "addressed to Unity Mortgage Corp. which is a distinct legal entity and not a

---

[4] See, e.g., Ed Peters Jewelry Co. v. C&J. Jewelry, 124 F3d 252, 266 (1st Cir. 1997).

11

party to this suit." Obviously, as plaintiff counsel explained at the lengthy conference concerning the objections, the questions are directed in fact to Financial Freedom. Since Financial Freedom has refused to disclose the terms of its purchase agreement of the reverse mortgage assets of Unity Mortgage Corp., plaintiff is hard pressed to guess at the details of their transaction. At a minimum, Financial Freedom had to know what employees it was "getting" when it purchased the reverse mortgage operations of Unity Mortgage. We know that Financial Freedom is in possession of information concerning employees of Unity Mortgage Corp. because Financial Freedom has purported to disclose an (undated) list of such employees in its possession with its Initial Disclosures. See Exhibit B.

5. In Plaintiff's July 9th Request, the plaintiff requested the following information in Interrogatory 14:

> **14. Please state the date on which Jeanine Ehrlich notified the plaintiff that plaintiff's services were terminated.**

<u>Why this information should be allowed</u>: The information sought in this interrogatory relates to the allegations contained in paragraphs 19-21 of the plaintiff's operative complaint:

12

    19.   After the plaintiff commenced diligent efforts and incurring expenses to market reverse mortgages to consumers in Connecticut with the knowledge of Financial Freedom and for its benefit, Financial Freedom suddenly and unreasonably terminated the plaintiff's employment.
    20.   The stated reason for the termination claimed by Financial Freedom was that, under new in-house policies, Financial Freedom was terminating Reverse Mortgage Specialists paid by commission.
    21.   At the time of the termination, the plaintiff was working on a specific Financial Freedom reverse mortgage loan application that was about to close as a result of a lead generated by the plaintiff.

Financial Freedom has <u>denied</u> each of these paragraphs. See Answer and Affirmative Defenses dated September 2, 2003. It is undisputed that prior to, and subsequent to the purchase of Unity Mortgage Corp.'s reverse mortgage assets, the Regional Manager for Unity Mortgage Corp. and Financial Freedom was the same person, Jeanine Ehrlich, at least until recently. It is spurious at best for Financial Freedom to object to this interrogatory on the basis that it is addressed to Unity Mortgage Corp.  The interrogatory is not addressed to that entity; it is addressed to the defendant.  Plaintiff is not aware that there is any dispute whatsoever that the plaintiff's termination was effectuated by Financial Freedom through Jeanine Ehrlich, its Regional Manager, and that it occurred on a date <u>after</u> the purchase of Unity Mortgage Corp.'s reverse mortgage assets by Financial Freedom.

6.  In Plaintiff's July 9th Request, the plaintiff requested the following information in Interrogatory 18:

> 18.  As to the Employee Listing for Unity Mortgage Corp. disclosed with defendant's Initial Disclosures in this action, please state the date said employee listing was created and whether any (other) employee listing or listings during the period from November 2000 to March 2001 were created.

See, also, requests for production # 10 and #12 which seek production of relevant documents in this category:

> 10.  All lists or compilations of persons working in Connecticut for the benefit of Unity Mortgage Corp. from October 1999 to the present.

> 12.  The employee listing or listings for Unity Mortgage Corp. created during the period from November 2000 to April 2001.

<u>Why this information should be allowed</u>:  The information sought in this interrogatory relates to the continuation of Unity Mortgage Corp. operations by Financial Freedom and to Financial Freedom's knowledge of plaintiff's employment. Again, it is spurious at best for Financial Freedom to object to this interrogatory on the basis that it "is addressed to Unity Mortgage Corp." and needlessly causing plaintiff's counsel to spend enormous time to seek disclosure to which plaintiff is entitled.  The interrogatory is not addressed to Unity Mortgage Corp.; it is addressed squarely to the defendant who disclosed one Employee Listing with its Initial Disclosures and now

14

attempts to evade discovery with a meaningless, improper objection as to information any business entity is going to have about another business entity it has acquired in the course of due diligence and acquisition of that entity.

    7.   In Plaintiff's July 9th Request, the plaintiff requested the following information in interrogatory 21.

> 21. Describe in detail all Financial Freedom policies, unwritten and written, in effect in 1999 and 2000 concerning employment and/or termination of commission agents and/or termination of Unity Mortgage Corp. employees.

See, also, requests for production #14 and #16, seeking production of the following documents:

> 14. A copy of all written policies which affected the plaintiff or any reverse mortgage specialist.

> 16. A copy of all documents in effect in 1999 and 2000 affecting commission agents and/or persons previously employed by and/or potentially receiving income from Unity Mortgage Corp.

<u>Why production should be allowed</u>:  As plaintiff alleges in his complaint, he was told he was being terminated ostensibly because of new policies of Financial Freedom in effect. See Amended Complaint dated July 10, 2003, ¶20 which Financial Freedom denies.  Thus Financial Freedom's policies are at issue and relevant. There is nothing vague about the interrogatory or the request. The objection that the request is properly addressed to Unity Mortgage Corp. is spurious and improper; it was Financial Freedom who

15

terminated the plaintiff and whose policies are thus at issue.

8. In Plaintiff's July 9th Request, the plaintiff requested the following information in Interrogatory 21:

> 21. Identify all law suits brought at any time against Financial Freedom including the docket numbers, the addresses of courts where such law suits were filed, and the name and address of plaintiffs' attorneys.

Why this information should be allowed: The goal of discovery is designed to elicit information which may lead to the discovery of admissible evidence. At a minimum, plaintiff should be entitled to be apprised of other law suits and docket numbers which indicate a pattern and practice of unfair and deceptive trade practices which may be relevant in plaintiff's action.

9. In Plaintiff's July 9th Request, the plaintiff requested the production of following documents:

> 13. All documents concerning the potential generating of leads for reverse mortgage loans by the plaintiff received by Jeanine Ehrlich and/or her subordinates.

Why production should be allowed: The plaintiff should be entitled to documents in Financial Freedom's possession documenting his generation of leads. It is undisputed that

Ms. Ehrlich hired the plaintiff and that she was Financial Freedom's Regional Manager at the time plaintiff was terminated.  Plaintiff's counsel has attempted to clarify that this is what plaintiff is seeking and plaintiff's counsel's understanding is that defendant's counsel position is that a corporation has no duty to disclose documents in the possession of its employees.  Plaintiff's counsel is not aware of any authority that would support that position especially here where a supervisory position, Regional Manager, is involved.

                                    THE PLAINTIFF

                                    _____
                                    BY HIS ATTORNEY
                                    Valerie E. Maze
                                    1465 E. Putnam Avenue
                                    Unit 111
                                    Old Greenwich, CT 06870
                                    (CT14080)
                                    Tel: (203) 698 1509

CERTIFICATION

I hereby certify that on the 9th of day of December, 2003, the foregoing was sent to:

Lorraine M. Cortese-Costa, Esq.
DURANT, NICHOLS HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
Bridgeport, CT 06604

Valerie E. Maze