FILED

2003 DEC 19  A 10: 47

US

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

WILLIAM J. MAZE                    :
                                   :
V.                                 :
                                   :
                                   :        CIVIL ACTION NO.
                                   :        **3:03CV166 (SRU)**
FINANCIAL FREEDOM SENIOR           :
FUNDING CORP.;                     :
UNITY MORTGAGE CORP.               :        October 13, 2003

### SECOND AMENDED COMPLAINT

#### JURISDICTION

1.   The plaintiff William J. Maze is an individual residing in Old Greenwich, Connecticut and a citizen of Connecticut.

2.   The defendant Financial Freedom Senior Funding Corporation (hereinafter "Financial Freedom") is a corporation with its principal office in Irvine, California.

3.   Financial Freedom is a corporation organized under the laws of the State of Delaware.

4.   Financial Freedom is not a citizen of the State of Connecticut.

5.   Financial Freedom is transacting business in the State of Connecticut.

6.   Financial Freedom has offered and continues to offer reverse mortgage financing to consumers in the State of

Connecticut and is the mortgagee of record as to numerous mortgage loans secured by residences in the State of Connecticut.

7.  As claimed in the plaintiff's demand for judgment, the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

8.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

9.  Venue is proper in the District of Connecticut because a substantial part of the events or omissions giving rise to the plaintiff's claim occurred in the District of Connecticut.

**FIRST COUNT** – **C.G.S. § 31-72**

10.  In November 2000, an office located in Albany, New York, engaged in the business of marketing reverse mortgages for Unity Mortgage Corp. extended an offer to plaintiff to work as a Reverse Mortgage Specialist in Connecticut.

11.  The offer to work as a Reverse Mortgage Specialist in Connecticut made to the plaintiff was extended by Jeanine Ehrlich who possessed the authority to make hiring decisions and make agreements as to compensation.

12.  Financial Freedom acquired the reverse mortgage assets of Unity Mortgage Corp. whereby the reverse mortgage operations of Unity Mortgage Corp. were merged with those of Financial Freedom.

13. Jeanine Ehrlich was a regional manager for Unity Mortgage Corp. in connection with reverse mortgage loan sales and, as a result of Financial Freedoms' acquisition of the reverse mortgage assets of Unity Mortgage Corp., has maintained the same title, Regional Manager, with Financial Freedom.

14. Jeanine Ehrlich requested that the plaintiff complete an employment application with Financial Freedom and the plaintiff complied and commenced activities to generate leads for reverse mortgage loans in Connecticut.

15. The plaintiff accepted the offer to work as Reverse Mortgage Specialist based on the agreement to pay the plaintiff certain commissions by way of compensation.

16. The plaintiff was entitled to receive a commission of 50% of the origination fee on each mortgage loan closed arising out of leads generated by the plaintiff in Connecticut and a lesser commission for such mortgage loans closed due to plaintiff's efforts from leads generated by Unity Mortgage Corp. and then Financial Freedom.

17. The plaintiff was permitted and suffered to work for Unity Mortgage Corp. and then Financial Freedom under the terms of said agreement.

18. The plaintiff expended great efforts and expense to generate leads for reverse mortgage loans for Unity Mortgage

Corp. and then for Financial Freedom including, but not limited
to, the following:

    a.   Developing contacts for reverse mortgages;

    b.   Developing leads for reverse mortgages;

    c.   Seeking out names of seniors and other homeowners n the
area of Connecticut who may be interested in reverse mortgages
and contacting them;

    d.   Contacting various municipal agencies in Connecticut,
including the filing of freedom-of-information requests, in
order to research names and addresses of seniors and other
homeowners who qualified for real property tax relief as
homeowners who could be interested in applying for reverse
mortgage financing;

    e.   With the knowledge and approval of Financial Freedom,
printing and mailing brochures to hundreds of targeted
homeowners at significant expense to the plaintiff ("the mass
mailing");

    f.   Pursuing leads generated by the mass mailing vigorously
through telephone contact and other contact;

    g.   Installing Financial Freedom software on the
plaintiff's computer at considerable expense to the plaintiff.

    19.   After the plaintiff commenced diligent efforts and
incurring expenses to market reverse mortgages to consumers in
Connecticut with the knowledge of Financial Freedom and for its

benefit, Financial Freedom suddenly and unreasonably terminated the plaintiff's employment.

20.   The stated reason for the termination claimed by Financial Freedom was that, under new in-house policies, Financial Freedom was terminating Reverse Mortgage Specialists paid by commission.

21.   At the time of the termination, the plaintiff was working on a specific Financial Freedom reverse mortgage loan application that was about to close as a result of a lead generated by the plaintiff.

22.   Nevertheless, Financial Freedom improperly denied the plaintiff the opportunity to proceed even with that reverse mortgage loan and sought to deprive the plaintiff of the right to receive the commission to which he was entitled.

23.   Subsequent to the improper termination, despite plaintiff's demand, Financial Freedom refused even to pay the plaintiff's expenses incurred on, *inter alia*, printing and mailing the mass mailing Financial Freedom brochures even though said expenses were incurred with defendant's knowledge.

24.   Subsequent to the improper and unreasonable termination of plaintiff's employment, Financial Freedom proceeded to close numerous reverse mortgage loans in Connecticut arising out of leads generated by plaintiff.

25.  Financial Freedom failed to inform plaintiff of the closings or the closing dates.

26.  Financial Freedom failed to pay the commissions due to plaintiff on reverse mortgage loans from consumers in Connecticut due to leads generated by the plaintiff.

27.  Financial Freedom concealed the fact that Financial Freedom had profited from Financial Freedom reverse mortgage loans closed as a result of leads generated by the plaintiff.

28.  The plaintiff generated leads for reverse mortgages in closed in Connecticut for Financial Freedom and Financial Freedom concealed the fact of said loans closing and failed to pay compensation due to the plaintiff.

29.  Financial Freedom failed to pay plaintiff wages due despite its statutory obligation in Connecticut to do so.

30.  Financial Freedom is liable to the plaintiff for all resulting damages, costs and fees claimed herein including, but not limited to, twice the compensation due, damages and fees available for the violation of Connecticut law and plaintiff's rights pursuant to C.G.S.§31-72.

**SECOND COUNT- WRONGFUL DISCHARGE**

1.- 30. Paragraphs 1-30 of the allegations of the First Count are hereby incorporated and realleged to be paragraphs 1-30 of this, the Second Count.

31.  The defendant's conduct violates a public policy of the State of Connecticut as contained in various statutes including, but not limited to, C.G.S.§ 31-72.

32.  Financial Freedom constructively and wrongfully discharged the plaintiff in violation of an important public policy.

33.  Financial Freedom acted with a reckless indifference to the rights of plaintiff and/or intentionally and wantonly violated plaintiff's rights.

34.  Financial Freedom is liable to the plaintiff for all resulting damages, costs and fees claimed herein including, but not limited to monetary damages and punitive damages as a result of said wrongful discharge.

**THIRD COUNT - BREACH OF CONTRACT**

1-34.  Paragraphs 1-34 of the Second Count are hereby realleged and incorporated to be paragraphs 1-31 of this, the Third Count.

35.  Under a specific agreement, Financial Freedom was obligated to pay plaintiff commissions due on reverse mortgage loans closed in Connecticut as a result of plaintiff's efforts and plaintiff rendered such services pursuant to the agreement.

36.  Financial Freedom unilaterally breached said agreement with the plaintiff.

37.  As a result of said breach, the plaintiff suffered damages and, in addition, lost opportunities.

### FOURTH COUNT - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

1-37.  Paragraphs 1-37 of the Third Count are hereby realleged and incorporated to be paragraphs 1-34 of this, the Fourth Count.

38.  In addition to its express obligations, Financial Freedom had an implied covenant to perform good-faith agreements made and acknowledged in the course of its business.

39.  The plaintiff relied on the good faith representations of Financial Freedom in marketing reverse mortgages for Financial Freedom in Connecticut.

40.  Financial Freedom violated its covenant of good faith and fair dealing.

41.  Plaintiff has suffered damages as a result of the violation of the covenant of good faith and fair dealing by Financial Freedom and is entitled to damages as provided by law.

### FIFTH COUNT - PROMISSORY ESTOPPEL

1-41.  Paragraphs 1-41 of the Fourth Count are hereby realleged and incorporated to be paragraphs 1-38 of this, the Fifth Count.

42.  Financial Freedom suffered and permitted the plaintiff to generate leads for Financial Freedom reverse mortgages in

Connecticut pursuant to the promise to pay the commission agreed.

43.   The promise to pay the plaintiff the compensation agreed induced the plaintiff to take the efforts and expend monies to market reverse mortgages in Connecticut for Financial Freedom in reliance upon said promise.

44.   Financial Freedom failed to pay the plaintiff the compensation due.

45.   As a result of said failure and breach, the plaintiff suffered damages and lost opportunities.

**SIXTH COUNT - IN THE ALTERNATIVE - UNJUST ENRICHMENT**

1.- 45.   Paragraphs 1-45 of the allegations of the Fifth Count are hereby realleged and incorporated to be paragraphs 1-45 of this, the Sixth Count.

46.   The unreasonable termination of plaintiff's agreement by Financial Freedom and depriving plaintiff of compensation to which plaintiff was due while reaping the benefit of plaintiff's marketing efforts and costs resulted in unjust enrichment to Financial Freedom at plaintiff's expense.

47.   Plaintiff is entitled to damages including but not limited to damages in restitution as a result of said unjust conduct and unjust enrichment.

**SEVENTH COUNT - FRAUDULENT MISREPRESENTATION**

1.- 47.  Paragraphs 1- 47 of the allegations of the Sixth Count are hereby realleged and incorporated to be paragraphs 1-47 of this, the Seventh Count.

48.  Financial Freedom intentionally and falsely represented to the plaintiff that plaintiff would be paid compensation by way of commission on origination fees on Financial Freedom reverse mortgage loans closed in Connecticut through plaintiff's efforts.

49.  At the time said representations were made, Financial Freedom knew said representations to be false.

50.  Financial Freedom allowed plaintiff to be begin working and continue working pursuant to the operating agreement knowing that the representation as to paying the plaintiff his commissions earned were false.

51.  Plaintiff relied on and acted on Financial Freedom's false representations to his detriment and is entitled to damages as provided by law.

**EIGHTH COUNT – NEGLIGENT MISREPRESENTATION**

1.- 51.  Paragraphs 1-51 of the allegations of the Seventh Count are hereby realleged and incorporated to be paragraphs 1-51 of this, the Eighth Count.

52.  Financial Freedom had a duty of reasonable care with respect to making representations to plaintiff in the course of its business.

53. Financial Freedom breached said duty by supplying false information and representations to plaintiff in the course of its business upon which plaintiff reasonably relied to plaintiff's detriment.

## NINTH COUNT - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

1. - 53. Paragraphs 1.- 53. of the allegations of the Eighth Count are hereby realleged and incorporated to be paragraphs 1- 53 of this, the Ninth Count.

54. Financial Freedom knew or should have realized that its conduct toward the plaintiff as alleged involved an unreasonable risk of causing emotional distress and that the distress, if it were caused, might result in illness or bodily harm.

55. Financial Freedom caused the plaintiff to experience emotional distress and is liable to the plaintiff for damages for same.

## TENTH COUNT - IN THE ALTERNATIVE - VIOLATION OF CUTPA

1. - 55. Paragraphs 1.- 55. of the allegations of the Ninth Count are hereby realleged and incorporated to be paragraphs 1-55 of this, the Tenth Count.

56. Subsequent to causing the improper and unreasonable termination of plaintiff's agreement, Financial Freedom

proceeded to close numerous reverse mortgage loans in Connecticut arising out of the leads generated by plaintiff.

57.   Financial Freedom knew that plaintiff had undertaken efforts and activities to generate numerous leads for reverse mortgage loans in Connecticut.

58.   Financial Freedom utilized the device of the acquisition of reverse mortgage loan assets of Unity Mortgage Corp. to cause a severance of the agreement with plaintiff and then used the fruits of plaintiff's labors so as to keep all the profits for its own enrichment.

59.   Financial Freedom deprived the plaintiff of any profit on certain reverse mortgage loans closed in Connecticut even though plaintiff generated the leads for those loans.

60.   The acts of Financial Freedom were actions performed in the conduct of trade or commerce in the State of Connecticut.

61.   The State of Connecticut has a specific and substantial public interest in prohibiting and penalizing improper corporate machinations in the State of Connecticut, especially those by out-of-state corporations, such as the use of the device of a corporate acquisition to deprive employees and/or commission agents who are citizens of the State of Connecticut, and members of the consuming public, of wages and profits to which they are entitled as a result of their labors in Connecticut.

62.   The acts of Financial Freedom as herein alleged constitute unfair and/or deceptive acts in violation of C.G.S.§42-110b.

63.   The plaintiff has suffered an ascertainable loss and claims all available relief pursuant to C.G.S.§42-110g.

64.   A copy of this complaint will be mailed to the State Attorney General and the State Commissioner/ Department of Consumer Protection.

### ELEVENTH COUNT - IN THE ALTERNATIVE - TORTIOUS CONSPIRACY

1. - 64.   Paragraphs 1.-64. of the allegations of the Tenth Count are hereby realleged and incorporated to be paragraphs 1-64 of this, the Eleventh Count.

65.   To the extent plaintiff was misled about a basic assumption of his contract and working relationship with Financial Freedom, Financial Freedom is liable as a result of its combination with Unity Mortgage Corp. so as to use plaintiff's services and deceive plaintiff for the enrichment of one or both of said corporations at plaintiff's expense.

66.   In furtherance of the combination, Financial Freedom knowingly used plaintiff's services and deceived plaintiff and unlawfully deprived plaintiff of his lawful compensation which acts resulted in damages to plaintiff.

## TWELFTH COUNT – UNITY MORTGAGE CORP. – BREACH OF CONTRACT

1.   Unity Mortgage Corp. is a duly organized corporation in Georgia York which is not currently permitted to do business in the State of Connecticut, having been withdrawn as an active corporation in Connecticut.

2.   As claimed in the plaintiff's demand for judgment, the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

3.   This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

4.   Venue is proper in the District of Connecticut because a substantial part of the events or omissions giving rise to the plaintiff's claim occurred in the District of Connecticut.

5.   Prior to November 2000, in an office located in Albany, New York, the defendant Unity Mortgage Corp. (hereinafter "UMC") engaged in the business of marketing reverse mortgages to consumers.

6.   UMC extended an offer to plaintiff to work as a Reverse Mortgage Specialist marking reverse mortgages to consumers in Connecticut.

7.   The offer to work as a Reverse Mortgage Specialist in Connecticut made to the plaintiff was extended by Jeanine Ehrlich who possessed the authority to make hiring decisions and make agreements as to compensation.

14

8.   The plaintiff accepted the offer to work as Reverse Mortgage Specialist based on the agreement to pay the plaintiff certain commissions by way of compensation.

9.   In November, 2000, UMC sold its reverse mortgage assets to Financial Freedom.

10.  As a result of said transaction, UMC's Regional Manager in Albany, Jeanine Ehrlich, became Financial Freedom's Regional Manager.

11.  UMC's regional office in Albany was, subsequent to the purchase of UMC's reverse mortgage assets by Financial Freedom, operated by Financial Freedom.

12.  Prior to time plaintiff began working as a Reverse Mortage Specialist, UMC represented to the plaintiff that the name of the company would be changing as a result of the take-over of UMC's reverse mortgage operations by Financial Freedom.

13.  Jeanine Ehrlich, the Regional Manager, represented to the plaintiff that the reverse mortgage operations of UMC were being carried on as before as a result of the take-over.

14.  UMC represented to the plaintiff that he would be working for the company under the new name.

15.  UMC represented to the plaintiff that with the new corporate name he would be entitled to commissions for leads generated resulting in closing of mortgage loans.

16.   Said representations were fundamental to plaintiff's agreement to work as Reverse Mortgage Specialist.

17.   Plaintiff worked as Reverse Mortgage Specialist based on said representations.

18.   At no time did UMC indicate to the plaintiff that his employment was terminated as a result of the purchase of the reverse mortgage operations of UMC by Financial Freedom or that plaintiff would not be entitled to commissions for leads generated resulting in closing of reverse mortgage loans by Financial Freedom.

19.   By written agreement the plaintiff was entitled to receive a commission of 50% of the origination fee on each mortgage loan closed arising out of leads generated by the plaintiff in Connecticut and a lesser commission for such mortgage loans closed due to plaintiff's efforts from leads he generated.

20.   The plaintiff was permitted and suffered to work for UMC.

21.   The plaintiff was permitted and suffered to work for Financial Freedom.

22.   Unity Mortgage disclosed plaintiff's status as Reverse Mortgage Specialist to Financial Freedom prior to November 23, 2000.

23.    Financial Freedom was advised by UMC that plaintiff was marketing reverse mortgages in Connecticut.

24.    The plaintiff expended great efforts and expense to generate leads for reverse mortgage loans in Connecticut including, but not limited to, the following:

a.    Developing contacts for reverse mortgages;

b.    Developing leads for reverse mortgages;

c.    Seeking out names of seniors and other homeowners in the area of Connecticut who may be interested in reverse mortgages and contacting them;

d.    Contacting various municipal agencies in Connecticut, including the filing of freedom-of-information requests, in order to research names and addresses of seniors and other homeowners who qualified for real property tax relief as homeowners who could be interested in applying for reverse mortgage financing;

e.    mailing brochures to hundreds of targeted homeowners at significant expense to the plaintiff ("the mass mailing");

f.    Pursuing leads generated by the mass mailing vigorously through telephone contact and other contact;

g.    Installing Financial Freedom software on the plaintiff's computer at considerable expense to the plaintiff.

25.    After the plaintiff commenced diligent efforts and incurring expenses to market reverse mortgages to consumers in

Connecticut, the defendant Financial Freedom unreasonably terminated the plaintiff's employment toward the latter half of January 2001.

26.    Said termination was accomplished by Jeanine Ehrlich, then the Regional Manager for Financial Freedom.

27.    At the time of the temination, Jeanine Ehrlich was not an employee of UMC.

28.    The stated reason for the termination claimed was that, under new in-house Financial Freedom policies, Reverse Mortgage Specialists paid by commission were being terminated.

29.    Subsequent to the improper and unreasonable termination of plaintiff's employment, Financial Freedom proceeded to close numerous reverse mortgage loans in Connecticut arising out of leads generated by plaintiff.

30.    Plaintiff was deprived of his commissions due on said reverse mortgage loans closed as a result of leads he generated through his marketing strategy and efforts.

31.    In this litigation Financial Freedom claims plaintiff was not working for Financial Freedom but for UMC.

32.    To the extent plaintiff was misled about a basic assumption of his contract with UMC, UMC breached its contract with the plaintiff and is liable to plaintiff for his consequential damages including, but not limited to, the

commission fees due to plaintiff on the reverse mortgage loans the leads for which were generated by plaintiff.

**THIRTEENTH COUNT – UNITY MORTGAGE CORP. – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

1-32.   Paragraphs 1-32 of the Twelfth Count are hereby realleged and incorporated to be paragraphs 1-32 of this, the Thirteenth Count.

33.   In addition to its express obligations, UMC had an implied covenant to perform good-faith agreements made and acknowledged in the course of its business.

34.   The plaintiff relied on the good faith representations of UMC in entering into an agreement to marketg reverse mortgages in Connecticut for UMC and/or its successor and subsequently did so.

35.   UMC violated its covenant of good faith and fair dealing.

36.   Plaintiff has suffered damages as a result of the violation of the covenant of good faith and fair dealing by UMC and is entitled to damages as provided by law.

**FOURTEENTH COUNT – PROMISSORY ESTOPPEL**

1-36.   Paragraphs 1-36 of the Thirteenth Count are hereby realleged and incorporated to be paragraphs 1-36 of this, the Fourteenth Count.

37.  UMC suffered and permitted the plaintiff to generate leads for UMC and/or Financial Freedom reverse mortgages in Connecticut pursuant to the promise to pay the commission agreed.

38.  The promise to pay the plaintiff the compensation agreed induced the plaintiff to take the efforts and expend monies to market reverse mortgages in Connecticut in reliance upon said promise.

39.  Plaintiff was not paid the compensation due under the agreement.

40.  As a result of said failure and breach, the plaintiff suffered damages and lost opportunities.

### FIFTEENTH COUNT –UNITY MORTGAGE CORP. – C.G.S.§31-72

1.- 40. Paragraphs 1-40 of the allegations of the Fourteenth Count are hereby incorporated and realleged to be paragraphs 1-40 of this, the Fifteenth Count.

41.  As a result of the aforesaid acts, plaintiff was deprived of wages due and UMC is liable for the failure to pay plaintiff's wages and resultant damages and remedies pursuant to C.G.S.§31-72.

### SIXTEENTH COUNT – UNITY MORTGAGE CORP. – INTENTIONAL MISREPRESENTATION

1.- 41. Paragraphs 1-41 of the allegations of the Fifteenth Count are hereby incorporated and realleged to be paragraphs 1-41 of this, the Sixteenth Count.

42. To the extent plaintiff was misled about his employment status in reference to Financial Freedom, despite the representations made by UMC and Financial Freedom, UMC intentionally and falsely made misrepresentations to the plaintiff in the course of business concerning the nature of plaintiff's agreement and status.

43. The plaintiff relied on said representations to his detriment.

## SEVENTEENTH COUNT - UNITY MORTGAGE CORP. - NEGLIGENT MISREPRESENTATION

1.- 43. Paragraphs 1-43 of the allegations of the Sixteenth Count are hereby realleged and incorporated to be paragraphs 1-43 of this, the Seventeenth Count.

44. UMC had a duty of reasonable care with respect to making representations to plaintiff in the course of its business.

45. To the extent plaintiff was misled about his employment status in reference to Financial Freedom, despite the representations made by UMC and Financial Freedom, UMC breached said duty by supplying false information and representations to

plaintiff in the course of its business upon which plaintiff
reasonably relied to plaintiff's detriment.

### EIGHTEENTH COUNT – UNITY MORTGAGE CORP. – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

1. – 45. Paragraphs 1.- 45. of the allegations of the
Seventeenth Count are hereby realleged and incorporated to be
paragraphs 1- 45 of this, the Eighteenth Count.

46. To the extent plaintiff was misled about his
employment status in reference to Financial Freedom, despite the
representations made by UMC and Financial Freedom, UMC knew or
should have realized that its conduct toward the plaintiff as
alleged involved an unreasonable risk of causing emotional
distress and that the distress, if it were caused, might result
in illness or bodily harm.

47. To the extent plaintiff was misled about his
employment status in reference to Financial Freedom, despite the
representations made by UMC and Financial Freedom, UMC caused
the plaintiff to experience emotional distress and is liable to
the plaintiff for damages for same.

### NINETEENTH COUNT – UNITY MORTGAGE CORP. – VIOLATION OF CUTPA

1. – 47.  Paragraphs 1.- 47. of the allegations of the
Eighteenth Count are hereby realleged and incorporated to be
paragraphs 1-47 of this, the Nineteenth Count.

22

48. UMC knew that plaintiff had undertaken efforts and activities to generate numerous leads for reverse mortgage loans in Connecticut.

49. UMC acted in concert with Financial Freedom and/or allowed Financial Freedom to use the fruits of plaintiff's labors to generate leads for reverse mortgages for its own enrichment indirectly and/or for the direct enrichment of Financial Freedom while depriving plaintiff of his compensation.

50. The acts of UMC were actions affecting and taken in the conduct of trade or commerce in the State of Connecticut.

51. The State of Connecticut has a specific and substantial public interest in prohibiting and penalizing improper corporate machinations in the State of Connecticut, especially those by out-of-state corporations, such as the use of the device of a corporate acquisition to deprive employees and/or commission agents who are citizens of the State of Connecticut, and members of the consuming public, of wages and profits to which they are entitled as a result of their labors in Connecticut.

52. The acts of UMC as herein alleged constitute unfair and/or deceptive acts in violation of C.G.S.§42-110b.

53. The plaintiff has suffered an ascertainable loss and claims all available relief pursuant to C.G.S.§42-110g.

54.  A copy of this complaint will be mailed to the State Attorney General and the State Commissioner/ Department of Consumer Protection.

**TWENTIETH COUNT – UNITY MORTGAGE CORP. – TORTIOUS CONSPIRACY**

1. – 54.  Paragraphs 1.-54. of the allegations of the Nineteenth Count are hereby realleged and incorporated to be paragraphs 1-54. of this, the Twentieth Count.

55.  To the extent plaintiff was misled about a basic assumption of his contract and working relationship with Financial Freedom, despite the representations made to plaitniff, UMC is liable in that it tortiously combined with Financial Freedom so as to use plaintiff's services and deceive plaintiff for the enrichment of one or both of the corporate defendants and unlawfully deprive plaintiff of his lawful compensation due.

56.  In furtherance of the combination, UMC made misrepresentations to the plaintiff and caused plaintiff's services to be used and plaintiff to be deceived and unlawfully deprived of his lawful compensation which acts resulted in damages to plaintiff.

## DEMAND FOR JUDGMENT

WHEREFORE, the plaintiff demands a trial by jury, judgment, and all legal and equitable relief to which he is entitled against the defendants including but not limited to:

I.    Damages and punitive damages in excess of $75,000.00;

II.   Twice the full amount of compensation due the plaintiff plus costs pursuant to C.G.S.§31-72;

III.  Lost wages;

IV.   Attorney's fees pursuant to C.G.S.§31-72 and all applicable law;

V.    Costs;

VI. Double costs and attorney's fees pursuant to C.G.S. §52-245;

VII. Damages, punitive damages and attorney's fees pursuant to CUTPA, C.G.S.§42-110g;

VIII. Prejudgment interest as provided by law.

IX.   An expedited trial by jury as permitted by law.

THE PLAINTIFF

By

Valerie E.Maze
Fed. Bar No. CT 14080
1465 E. Putnam Avenue
Unit 111
Old Greenwich, CT
06870
(203) 698 1509

24

## CERTIFICATION

I hereby certify that on the _14th_ of day of October,

2003, the foregoing was sent to:

Lorraine M. Cortese-Costa, Esq.
DURANT, NICHOLS HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT  06604

Valerie E. Maze